# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 420 | DATE | 5/25/2000 |
| CASE TITLE | CENTRAL STATES vs. FULKERSON | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiffs' motion for summary judgment is granted. Defendant Fulkerson's motion for judgment on the pleadings as to count II is denied for the reasons stated in open court. Pretrial order, pretrial conference and trial dates of 6/2/00, 6/6/00 and 6/12/00 are stricken. Status hearing is set for June 8, 2000 at 10:00 am.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| ✓ | No notices required, advised in open court. AND | | number of notices | | |
| | No notices required. | | | | |
| ✗ | Notices mailed by judge's staff. | | MAY 3 0 2000 | | 60 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | 00 MAY 27 AM 7:58    5-25-00 date mailed notice | | |
| | JS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 99 CV 420 ) |
| THOMAS C. FULKERSON, DOLLY S. FULKERSON, and HOLMES FREIGHT LINES, INC., | ) ) ) ) |
| Defendants. | ) ) |

**DOCKETED**

MAY 3 0 2000

<u>MEMORANDUM OPINION AND ORDER</u>

JAMES F. HOLDERMAN, District Judge:

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, and Howard McDougall, trustee (hereinafter referred to collectively as "plaintiffs") filed this action to collect withdrawal liability payments from defendants Holmes Freight Lines, Inc. ("Holmes"),[1] Thomas C. Fulkerson ("Thomas Fulkerson"), and Dolly S. Fulkerson ("Dolly Fulkerson")[2] pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 <u>et seq.</u>. Plaintiffs have filed

---

[1] This court entered judgment against Holmes on October 15, 1999, following the granting of plaintiffs' motion for summary judgment.

[2] The court may refer to the defendants Thomas Fulkerson and Dolly Fulkerson collectively as "defendants" in this Memorandum Opinion and Order.

1



a motion for summary judgment against defendants Thomas Fulkerson and Dolly Fulkerson, jointly and severally, for past due interim payments for withdrawal liability together with interest, liquidated damages, attorney's fees and costs. For the reasons set forth in this Memorandum Opinion and Order, plaintiffs' motion for summary judgment is GRANTED.

## STATEMENT OF FACTS[3]

The following facts are undisputed. At all relevant times for purposes of this lawsuit, defendant Holmes was owned by defendants Thomas and Dolly Fulkerson, husband and wife. From April of 1983 until Holmes was liquidated, Thomas Fulkerson owned 68% of Holmes' stock and Dolly Fulkerson owned 32% of Holmes' stock. Thomas Fulkerson was the President of Holmes since its inception in 1965 and actively involved in Holmes' operations. At various times since December 31, 1982, Dolly Fulkerson held the titles of Vice President, Secretary, and Director of Holmes but was not actively involved in the operation of Holmes. Holmes was a trucking operation, which primarily hauled freight between Omaha, Nebraska and Chicago, Illinois.

In January of 1985, at the direction of Thomas Fulkerson, Holmes purchased a parcel of land in Salt Lake City, Utah and built a trucking terminal on the property. Following the construction of the trucking terminal, the property was sold to both Thomas Fulkerson and Dolly Fulkerson at Holmes' cost. The property was subsequently leased from May 1, 1986 to the present to an entity owned by the sons of defendants Thomas and Dolly Fulkerson, Action Express, Inc. ("Action Express"),[4] under a long-term triple net lease.

---

[3] The following statement of facts comes from the parties' Local Rule 56.1(a) and (b) statements of material facts and accompanying exhibits.

[4] Action Express was purchased by defendants' sons Daniel and David Fulkerson in 1985. One half of the purchase price was financed by Daniel and David Fulkerson and the other half of

In July of 1985, at the direction of Thomas Fulkerson, Holmes also purchased a parcel of land in Portland, Oregon and built a trucking terminal on the property. Following the construction of the trucking terminal, the property was sold to Thomas Fulkerson at Holmes' cost. The property was then subsequently leased from May 1, 1986 to August 29, 1995 to Action Express also under a long-term triple net lease. Thomas Fulkerson sold the property in 1995 for a gain of $166,639.00.

Prior to January of 1987, as with the other two transactions and at the direction of Thomas Fulkerson, Holmes also purchased a parcel of land in Auburn, Washington. Once again, Holmes built a trucking terminal on the property and, following the completion of the terminal, the property was sold to Thomas Fulkerson at Holmes' cost. This trucking terminal was also leased to Action Express from May 1, 1986 until July 5, 1990 pursuant to the terms of a long-term triple net lease. In July of 1990, Thomas Fulkerson sold the property and realized a gain of approximately $163,676.00.

These three trucking terminals[5] were sold to Thomas Fulkerson and Dolly Fulkerson because they were non-income properties for Holmes in the sense that the payment of rent by Action Express pursuant to the triple net lease would have only covered enough to pay the mortgage payments. Thomas Fulkerson not only negotiated the purchase of the properties on behalf of himself and

the purchase price was given to Daniel and David Fulkerson as a gift by defendants Thomas and Dolly Fulkerson. Over the years, while Daniel and David Fulkerson owned Action Express, Holmes gave Action Express many unsecured loans. In addition, Holmes and Thomas and Dolly Fulkerson executed Guaranty Agreements on behalf of Action Express. Dolly Fulkerson also loaned Action Express money pursuant to promissory notes.

[5] Defendants argue that the only pertinent and material trucking terminal for purposes of this action is the trucking terminal located in Salt Lake City, Utah because at the time Holmes incurred the withdrawal liability, defendants only owned the Salt Lake City, Utah trucking terminal. This court does not need to decide whether the other two terminals are material to the issues in this case, but they are certainly relevant to the issues.

Holmes, but he also negotiated and entered into the written leases between himself and Action Express. Holmes, however, secured in its name and paid the insurance on the trucking terminal properties owned by Thomas Fulkerson and Dolly Fulkerson. The insurance payments were eventually reimbursed to Holmes by defendants. Additionally, from 1984 through January 31, 1999, Holmes' Chief Financial Officer, Steve Kerns ("Kerns"), was also an officer of Action Express, holding the title of Secretary, and performed various duties for Action Express. For these duties as Secretary, Kerns never received wage payments or a salary from Action Express. Furthermore, for each of the years from 1983 to 1998, Thomas and Dolly Fulkerson filed joint federal income tax returns and deducted various expenses and depreciations against the rents they received in connection with the leasing of the trucking terminal properties to Action Express.

Holmes was subject to collective bargaining agreements executed between itself and various Local Unions affiliated with the International Brotherhood of Teamsters pursuant to which Holmes was required to make contributions to plaintiffs' pension fund on behalf of certain employees. On July 17, 1998, Holmes ceased all of its business operations and began liquidating its assets. Shortly thereafter, on July 18, 1998, plaintiff Central States Pension Fund determined that Holmes had ceased operations. As a result, Holmes effected a complete withdrawal from the Central States Pension Fund because Holmes neither contributed nor was obligated to contribute to Central States Pension Fund pursuant to § 4203 of ERISA, 29 U.S.C. § 1383. Thus, Holmes incurred withdrawal liability to the Pension Fund. Holmes received a demand letter for payment of the withdrawal liability in the amount of $1,889,011.01. Holmes treated the withdrawal liability claim as an unsecured claim, and thereby, sent a check to the Central States Pension Fund in the amount of $236,126.45, along with a letter explaining that Holmes had ceased operation and was undergoing a

4

voluntary liquidation. To date, plaintiffs have not received any additional money from any of the defendants. This action was filed to recoup the amount alleged owed for withdrawal liability. Plaintiffs assert that defendants leasing of truck terminals to Action Express was an unincorporated leasing operation and trade or business for purposes of ERISA and the MPPAA. Consequently, plaintiffs claim defendants Thomas and Dolly Fulkerson are liable for Holmes' withdrawal liability.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

I. Leasing of Trucking Terminals Is A Trade or Business For Purposes of § 1301(b)(1) of ERISA

In 1980, Congress passed the MPPAA, amending ERISA, as an attempt to protect unfunded vested benefits of beneficiaries of multiemployer plans when employers withdraw from a multiemployer plan. Central States, Southeast & Southwest Areas Pension Fund v. Bell Transit Co., 22 F.3d 706, 707 (7th Cir. 1994). In other words, the MPPAA was passed in order to ensure employers would not leave a plan with vested pension obligations that were only partially funded. Id. Thus, an employer that withdraws from a pension plan would be held liable for the employer's share of any "unfunded vested benefits," more commonly known as "withdrawal liability." 29 U.S.C. § 1381(a), (b)(1).

Section 1301(b)(1) of ERISA also allows multiemployer plans to collect withdrawal liability from "all employees of trades or businesses (whether or not incorporated) which are under common control." 29 U.S.C. § 1301(b)(1). In essence, § 1301(b)(1) imputes an employer's withdrawal liability to all trades or businesses under the common control of the withdrawing employer. Central States, Southeast & Southwest Areas Pension Fund v. Ditello, 974 F.2d 2887, 889 (7th Cir. 1992); Central States, Southeast & Southwest Areas Pension Fund v. Personnel, Inc., 974 F.2d 789, 792 (7th Cir. 1992). In this case, defendants do not contest that Holmes and their leasing of the trucking terminals were under their "common control." Rather, defendants argue that their ownership of the trucking terminals, leased to "an unrelated third party," (Def.'s Response p. 33-34), pursuant to the terms of a triple net lease, is not a "trade or business" for purposes of § 1301(b)(1). Plaintiffs contend, however, that defendants' ownership and leasing of the trucking terminals amounted to a trade or business for purposes of § 1301(b)(1), which thereby makes each defendant jointly and severally liable for the withdrawal liability.

Unfortunately, neither ERISA nor the MPPAA defines the term "trade or business." In 1992, after different panels of judges in the Seventh Circuit addressed the question as to the proper definition and interpretation of the phrase "trade or business," what constituted a "trade or business" was not entirely clear. Compare Central States, Southeast & Southwest Areas Pension Fund v. Ditello, 974 F.2d 2887, 889 (7th Cir. 1992), with Central States, Southeast & Southwest Areas Pension Fund v. Personnel, Inc., 974 F.2d 789, 792 (7th Cir. 1992); see also Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Kelly, No. 95 C 501, 1996 WL 507258 (N.D. Ill. Sept. 4, 1996) (providing an extensive analysis of different holdings on the issue). Yet, as this court previously noted in denying defendants' motion for summary judgment,[6] after reviewing the relevant case law, the Seventh Circuit's decision in Personnel is more authoritative and persuasive. Still, after a further comprehensive review of the statute, relevant case law, and recent decisions on the issue, this court remains convinced that the Seventh Circuit's decision in Personnel is the most authoritative and persuasive decision on the issue. See also Central States, Southeast and Southwest Areas Pension Fund v. Neiman, No. 99 C 1181, 2000 WL 310285 (N.D. Ill. Mar. 24, 2000) (finding the approach followed in Personnel authoritative and helpful); Kelly, 1996 WL 507258, at *4 (same); Central States, Southeast and Southwest Areas Pension Fund v. Miller, 868 F. Supp. 995 (N.D. Ill. 1994) (same).

In Personnel, the Seventh Circuit held that the definition of "trade or business" developed by the United States Supreme Court in Commissioner of I.R.S. v. Groetzinger, 480 U.S. 23, 107 S.Ct. 980 (1987) was "helpful in distinguishing trades or businesses from purely personal activities

---

[6] This court denied defendants' motion for summary judgment in open court on November 5, 1999.

7

or investments." Personnel, 974 F.2d at 794. In Groetzinger, the Supreme Court defined "trade or business" under § 162(a) of the Internal Revenue Code and stated:

> Of course, not every income producing and profit making endeavor constitutes a trade or business. The income tax law, almost from the beginning, has distinguished between a business or trade, on the one hand, and 'transactions entered into for profit but, not connected with . . . business or trade,' on the other . . . See Revenue Act of 1916, § 5(a), Fifth, 39 Stat. 759. Congress 'distinguished the broad range of income or profit producing activities from those satisfying the narrow category of trade or business.' We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. Sporadic activity, a hobby, or an amusement diversion does not qualify.

Groetzinger, 480 U.S. at 35, 107 S.Ct. at 987 (quoting Whipple v. Commissioner, 373 U.S. 193, 197, 83 S.Ct. 1168, 1171 (1963)). Thus, under that definition, the Seventh Circuit held in Personnel that the defendant's real estate activities, in owning and leasing residential and commercial buildings, qualified as a trade or business. Personnel, 974 F.2d at 795. The Seventh Circuit noted that the real estate activities were quite substantial in that they were regular and continuous and were also designed to produce income. Id.

Since the Personnel decision, the Court of Appeals for the District of Columbia Circuit addressed the very same issue, and also found the Personnel decision preferable to the Ditello decision. See Connors v. Incoal, Inc., 995 F.2d 245, 249-50 (D.C. Cir. 1993). In that case, the District of Columbia Circuit held that the Supreme Court's decision in Groetzinger was "the most authoritative pronouncement available." Id. at 251. The court further declined to follow the Seventh Circuit's decision in Ditello because no "economic nexus" is required under the plain language of the statute. Id. at 249.

Consequently, following the Seventh Circuit's decision in Personnel, as other district court

8

judges have, as well as the Court of Appeals for the District of Columbia's decision in Incoal, the law is clear that an enterprise qualifies as a "trade or business" under § 1301(b)(1) when a defendant engages in the activity with continuity and regularity and primarily for income or profit. Sporadic involvement in an activity, a hobby, or some other amusement diversion will not, however, qualify as a trade or business. Additionally, this court may consider other factors in determining whether an enterprise qualifies as a trade or business, including but not limited to: (1) the intent in creating the enterprise; (2) the tax treatment of the enterprise; and (3) the legal form of the disputed enterprise (e.g., corporation, partnership, joint venture, individual owner or other). Personnel, 974 F.2d at 794-95; Incoal, 995 F.2d at 254; Neiman, 2000 WL 310285, at *5; Kelly, 1996 WL 507258, at *9; Miller, 868 F. Supp. at 1003.

Defendants first argue that the question of whether their enterprise of leasing the trucking terminals should qualify as a "trade or business" involves a factual dispute which requires a trial. Yet, as previously stated, the material facts in this case are undisputed. Thus, a court may properly resolve whether an enterprise qualifies as a "trade or business" on a motion for summary judgment. Central States Pension Fund v. Slotky, 956 F.2d 1369, 1373 (7th Cir. 1992). Moreover, the Seventh Circuit specifically stated that, while factual disputes are not normally supposed to be resolved on summary judgment, when there is no genuine issue of material fact, then a court may properly resolve the issue whether an enterprise is a "trade or business" because such a factual issue is only one of "characterization." Personnel, 974 F.2d at 792; Slotky, 956 F.2d at 1373-74.[7] The material

---

[7] Defendants argue that this court should not resolve this issue because defendants also have a right to a jury trial on the issue whether their enterprise was a trade or business. This court, however, does not need to resolve the issue of whether defendants are entitled to a jury trial on the issue because as the Seventh Circuit noted in Personnel, when the facts are undisputed and the only factual issue is one of characterization, a court can properly enter

facts before this court are entirely undisputed. Therefore, in light of the given mandate of the Seventh Circuit, this court may proceed to resolve on summary judgment the issue of whether defendants' leasing of the trucking terminal in Salt Lake City, Utah to Action Express was a trade or business.

The undisputed facts in this case establish that the defendants' leasing of the trucking terminal was a "trade or business" under established law. Defendants admit that they owned and regularly leased the Salt Lake City, Utah trucking terminal to a third-party, Action Express, for almost twelve years. In addition, defendants also leased two other trucking terminal properties to Action Express for a number of continuous years. Thus, the requirements of continuity and regularity have been met. See Personnel, 974 F.2d at 795 (finding that the rental of real estate is a trade or business even though the taxpayer rented a single piece of property); Kelly, 1996 WL 507258, *9 (holding that leasing of property over thirty years was regular and continuous); Miller, 868 F. Supp. at 1004-05 (concluding that ten months of rental income from leasing a residential property was sufficient to establish regular and continuous activity). Moreover, defendants' leasing operation was quite substantial.

The facts further establish that defendants leased the trucking terminal for the purpose of generating income or profit. Defendants declared the income they received from the leasing of the trucking terminal as supplemental income on their joint federal income tax returns. Additionally, defendants claimed various deductions for expenses and deprecation for several years on their joint

---

summary judgment. Personnel, 974 F.2d at 792-96. In fact, the Seventh Circuit in Personnel reversed summary judgment for defendants and ordered the entry of summary judgment for plaintiffs under quite similar circumstances. Id. Thus, relying on Personnel and because the facts are undisputed here, this court is only left to resolve the factual issue as one of characterization.

federal income tax returns. This allowed defendants to claim less joint net income and hence reduced their joint individual tax liability. Thus, the defendants' tax treatment of the trucking terminals enterprise confirms that they operated the trucking terminals for the purpose of generating income. Therefore, similar to the defendants in Personnel, Kelly, and Miller, defendants' joint federal income tax returns sufficiently establish that they treated the trucking terminals as a "trade or business" designed to produce income. See Personnel, 974 F.2d at 795 (stating that deductions for real estate activities was evidence that the activities were a "trade or business); Kelly, 1996 WL 507258, *9 (defendant's claimed losses on federal tax return for depreciation, among other things, provided evidence that defendant treated ranch as trade or business); Miller, 868 F. Supp. at 1004 (defendants' deductions for all the expenses associated with their residential rental property was evidence of trade or business).

Defendants nevertheless argue that their leasing of the trucking terminal properties was not as a trade or business, but rather was really nothing more than a passive investment. Defendants claim that the use of the triple net lease only verifies that it was a passive investment. The fact that defendants used a triple net lease, however, which defendants claim required little, if no, effort on their part to maintain the properties, does not make this case distinguishable from those cases previously cited. The mere fact that the triple net lease imposed less responsibility on the defendants in maintaining the properties they leased does not make their enterprise of leasing the properties any less of a trade or business. This is especially true in light of the fact that defendants admitted that Holmes paid the insurance on the property, which was ultimately reimbursed to Holmes by

defendants.[8] Additionally, as noted above, defendants took deductions from income on their jointly filed federal income tax returns for depreciation and expenses. A passive investment, such as stocks and bonds, does not yield these same tax benefits which defendants took and are only allowed for a trade or business.

Defendants further argue that their leasing of the trucking terminal properties was not as a trade or business because, not only was their leasing of the trucking terminals entirely unrelated to the activities of Holmes, but the leases involved were to an unrelated third party. First of all, the Seventh Circuit in Personnel rejected the same argument as to relatedness and concluded § 1301(b)(1) does not require that the "trades or businesses" under common control be economically related. Personnel, 974 F.2d at 793 (citing Central States, Southeast and Southwest Areas Pension Fund v. Slotky, 956 F.2d 1369, 1374 (7th Cir. 1992); Western Conference of Teamsters Pension Trust Fund v. LaFrenz, 837 F.2d 892, 895 (9th Cir. 1988)); see also Incoal, 995 F.2d at 249-50 (quoting Personnel, 974 F.2d at 793). Rather, the Seventh Circuit found that the only nexus required to establish withdrawal liability was the "common control" of the trade or business. Personnel, 974 F.2d at 793. And, as previously stated, defendants do not contest that their enterprise and Holmes were under the same common control. Second, this court does not believe Thomas and Dolly Fulkerson leased the trucking terminals to an unrelated third party. The undisputed evidence before the court establishes that defendants leased the properties to a company wholly owned and operated

---

[8] Defendants' statement in their brief that they were not obligated to pay for the insurance under the triple net lease is disingenuous at best. Defendants' admitted that they ultimately paid for the insurance on the property. Thus, while under the terms of the lease, they may not have been obligated to pay for the insurance, they undoubtably did pay for the insurance. This only further provides support for a finding that defendants ultimately conducted a trade or business by leasing the trucking terminal properties.

by their sons, David and Daniel Fulkerson, whom defendants Thomas and Dolly Fulkerson financially aided with loans and monetary gifts throughout David and Daniel Fulkerson's ownership of Action Express.

Defendants also argue that their intent in purchasing and leasing the trucking terminals is a fact question which warrants the denial of this motion for summary judgment. But, a defendant must point to objective evidence that he or she did not intend to create a business. Incoal, 995 F.2d at 254; Kelly, 1996 WL 507258, *9; Miller, 868 F. Supp. at 1003. In this case, defendants have failed to point to any objective evidence that they did not intend to create a trade or business as defined by the Seventh Circuit. Indeed, the objective evidence, such as Thomas and Dolly Fulkerson's annual income tax treatment of their enterprise, demonstrates a clear and continuous intent to engage in the business of leasing the truck terminals to generate income. Moreover, their enterprise was certainly more than a hobby or amusement diversion. Therefore, defendants' self-serving statement of intent is not probative of whether their enterprise is a trade or business. Id. Furthermore, intent is but one factor that this court can look at in determining whether defendants' enterprise constitutes a trade or business. Intent alone is not dispositive. The overwhelming evidence supports the determination that defendants' enterprise was a trade or business under § 1301(b)(1), and defendants have failed to demonstrate there is a genuine issue of material fact on this point.

Accordingly, this court holds that the leasing of the trucking terminals to Action Express constituted a "trade or business." Applying the Seventh Circuit decision in Personnel and its progeny, this court finds no other conclusion is tenable. Moreover, since it is undisputed that Holmes and the trucking terminals were under defendants' "common control," Holmes and the trucking terminals are a "single employer" as defined by § 1301(b)(1). Because there is no genuine

issue of material fact that the withdrawal liability was properly assessed, that defendants leasing activity was under common control with the withdrawn corporation, Holmes, and that the leasing activity constituted a trade or business, the granting of summary judgment in favor of plaintiffs is warranted and appropriate.

## II. Dolly Fulkerson's Liability

Even though the undisputed material facts establish that Thomas and Dolly Fulkerson's leasing of the trucking terminals to Action Express resulted in their being liable under § 1301(b)(1), defendants additionally argue that Dolly Fulkerson should not be held liable because she did not intend to be Thomas Fulkerson's partner with respect to the leasing of the Salt Lake City trucking terminal to Action Express. Specifically, defendants assert that Dolly Fulkerson never was involved in the leasing of the properties. Defendants, however, do acknowledge that Dolly Fulkerson signed various documents including the deed to the property which evidenced her joint ownership of the Salt Lake City property with Thomas Fulkerson. Defendants also acknowledge that Dolly Fulkerson signed, in conjunction with Thomas Fulkerson, an amendment to the lease agreement between Holmes and Action Express. Plaintiffs contend that this very evidence indicates Dolly Fulkerson's intent to be in partnership with her husband, Thomas Fulkerson, with respect to the business of leasing the terminals. Thus, plaintiffs argue that Dolly Fulkerson should be held jointly and severally liable because Dolly Fulkerson was a knowing partner with Thomas Fulkerson in the leasing of the trucking terminals.

The Seventh Circuit has consistently held that both spouses can only be liable for a trade or business's unmet pension obligations when they intended to be partners in that enterprise. Central States Pension Fund v. Johnson, 991 F.2d 387, 391-92 (7th Cir. 1993); see also Chicago Truck

<u>Drivers, Helpers & Warehouse Workers Union Pension Fund v. Steinberg</u>, 32 F.3d 269 (7th Cir. 1994). While "summary judgment continues to be 'notoriously inappropriate where intent is at issue,'" the Seventh Circuit reversed a summary judgment entered in favor of a defendant spouse in <u>Johnson</u> because the nonmoving party presented considerable evidence tending to show a partnership existed. Among the several facts in <u>Johnson</u> upon which the Seventh Circuit relied, were that the money used to purchase the building and semi-tractor which was leased came from the couple's joint bank accounts, that the rental income produced by the leasing activities was deposited into the couple's joint accounts, and that the couple claimed deductions from their combined gross income on their joint federal tax return based on the leasing activities. <u>Johnson</u>, 991 F.2d at 391-94. In reversing the summary judgment that had been granted to Lois Johnson by the district court, the Seventh Circuit noted that Lois Johnson relied only on a self-serving conclusory denial that she intended to form a partnership, as well as the fact that Lois Johnson failed to "exercise control" over the leasing business. <u>Id.</u> at 394. The Seventh Circuit found these facts were unrevealing in <u>Johnson</u>. <u>Id.</u>

Here, as in <u>Johnson</u>, defendants have failed to proffer evidence sufficient to create a genuine issue of material fact on the question of whether Dolly Fulkerson intended to be a partner in the leasing enterprise. Although defendants argue their declarations are sufficient to establish Dolly Fulkerson's lack of intent, the Seventh Circuit has consistently held that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." <u>Slowiak v. Land O'Lakes, Inc.</u>, 987 F.2d 1293, 1295 (7th Cir. 1993); <u>see also</u> <u>Haywood v. North Am. Van Lines, Inc.</u>, 121 F.3d 1066, 1071 (7th Cir. 1997) ("[C]onclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment."). Moreover, as

noted by the Seventh Circuit regarding Lois Johnson in the <u>Johnson</u> case, the mere fact Dolly Fulkerson was not involved in the partnership enterprise to the same extent as her husband Thomas Fulkerson is unrevealing. <u>Johnson</u>, 991 F.2d at 394. Defendants readily acknowledged that the triple net leases on the trucking terminals required little, if any, effort by either of them. Also, as mentioned earlier, defendants jointly owned the property and Dolly Fulkerson signed documents with Thomas Fulkerson, such as the lease agreement amendment, to enable the enterprise to carry on its activities as both defendants jointly intended for their joint benefit. Additionally, defendants annually filed joint federal income tax returns, which claimed the proceeds from the leasing of the truck terminals as joint supplemental income and jointly claimed various deductions for expenses and depreciation arising from their joint enterprise. Therefore, based on the evidence in the record, this court finds defendants have failed to show a genuine issue of material fact exists requiring a trial on this issue. Therefore, summary judgment is warranted for plaintiffs on this issue as well. Dolly Fulkerson is jointly liable with Thomas Fulkerson for the withdrawal liability.


## CONCLUSION

For the above stated reasons, plaintiffs' motion for summary judgment is GRANTED. All other pending motions are moot. The parties are strongly encouraged to reach agreement as to the monetary amount of the withdrawal liability payments, together with interest, liquidated damages, and attorneys fees and costs, if any, that should be provided, pursuant to this Order and without

waiver of the issues decided here, from defendants to plaintiffs. The trial date set for June 12, 2000

is stricken. Counsel are to report on status at 10:00 a.m. on June 8, 2000.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: May 25, 2000